420 F.Supp. 582 (1976)
COLORADO PUBLIC INTEREST RESEARCH GROUP, INC., a non-profit Colorado Corporation and Victor Feeney, Plaintiffs,
v.
Carla A. HILLS, Secretary, U. S. Department of Housing and Urban Development, and Alan J. Kappeler, Acting Interstate Land Sales Administrator, Department of Housing and Urban Development, Defendants.
Civ. A. 75-A-672.
United States District Court, D. Colorado.
August 2, 1976.
*583 James L. Kurtz-Phelan, Denver, Colo., and David C. Mastbaum, Boulder, Colo., for plaintiffs.
James L. Treece, U.S. Atty., by Hank Meshorer, Trial Atty., Dept. of Justice, Land and Natural Resources Div., Denver, Colo., for defendants; Samuel B. Rothman, Dept. of Housing and Urban Development, of counsel.

MEMORANDUM OPINION AND ORDER
ARRAJ, Chief Judge.
This matter is before the court on the parties' cross motions for summary judgment. Lengthy briefs and numerous exhibits were filed by each side prior to oral argument. The court having considered the arguments, stipulated facts and exhibits, and the parties having stipulated that there is no genuine issue of material fact, the matter is ripe for disposition.

I
This case concerns the interface between the Interstate Land Sales Full Disclosure Act of 1968 [ILSA], 15 U.S.C. § 1701 et seq., and the National Environmental Policy Act of 1969 [NEPA], 42 U.S.C. § 4321 et seq. and its effects on the Office of Interstate Land Sales Registrations [OILSR] in the Department of Housing and Urban Development [HUD]. Plaintiffs are the Colorado Public Interest Research Group [COPIRG] and Victor Feeney, a resident of Colorado. Defendants are Carla A. Hills, the Secretary of HUD, and Alan J. Kappeler, the Acting Interstate Land Sales Administrator of HUD. The court has jurisdiction under §§ 1337, 1361 and 2201 of the Judicial Code.
Briefly, plaintiffs claim that defendants have failed to carry out their duties under NEPA in the administration of ILSA and have failed to adopt rules and regulations alleged to be necessary in order to protect the public interest. The manner in which plaintiffs would have defendants comply with NEPA is described variously and at length in the complaint, the pretrial order, and the briefs. At oral argument, at the court's urging, counsel for plaintiffs singled out for emphasis five different proposed compliance measures:
First, property reports and statements of record filed by land developers in compliance with ILSA should be modified to contain more information concerning the impact of the registered subdivision on the environment.
Second, defendants should disclose the nationwide environmental consequences of requiring the disclosures discussed above and alternative types of disclosures in a comprehensive programmatic environmental impact statement.
Third, OILSR should be made to disclose periodically the cumulative environmental impacts of subdivisions registered with the office based upon its independent analysis and evaluation of developer-generated information.
Fourth, OILSR should submit a report to the President and the Council on Environmental Quality concerning any inconsistencies between NEPA and ILSA or regulations promulgated pursuant to ILSA.
Fifth, OILSR should generally comply with other aspects of NEPA not involving an environmental impact statement.
Defendants, on the other hand, have at various times stated their position in rather bald terms: the National Environmental Policy Act is not applicable to the Office of *584 Interstate Land Sales Registration in the administration of the Interstate Land Sales Full Disclosure Act. This analysis is more simple than sound. Unquestionably the mandate of NEPA does apply to ILSA and the defendants in some respects; it is our task to consider the extent of that application.

II
Our analysis must begin with the Supreme Court's most recent statement concerning the interface of NEPA and ILSA. Flint Ridge Development Co. v. Scenic Rivers Association, ___ U.S. ___, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976), rev'g, 520 F.2d 240 (10th Cir. 1975) [Flint Ridge]. The question presented was whether NEPA requires HUD to prepare an environmental impact statement before it may allow a disclosure statement filed with it by a private real estate developer pursuant to ILSA to become effective. The answer that the unanimous Court gave, Mr. Justice Powell not taking part, was no.
The Court set out the provisions and requirements of ILSA, noting its purpose to "prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." 96 S.Ct. at 2433; 15 U.S.C. § 1705. This purpose is accomplished by the filing of a statement of record and property report with HUD. If the statement is on its face complete and accurate, it must be permitted to go into effect.
The Secretary has no power to evaluate the substance of the developer's proposal; and the Disclosure Act expressly provides that "[t]he fact that a statement of record with respect to a subdivision has been filed or is in effect shall not be deemed a finding by the Secretary that the statement of record is true and accurate on its face, or be held to mean the Secretary has in any way passed upon the merits of, or given approval to, such subdivision." § 1417 of the Disclosure Act, 15 U.S.C. § 1716. Moreover, the Act prohibits any person from advertising or representing that the Secretary approves or recommends the subdivision or the sale or lease of lots therein. §§ 1408(b), 1417 of the Disclosure Act, 15 U.S.C. §§ 1707(b), 1716.
Flint Ridge, supra, 96 S.Ct. at 2435 (footnote omitted).
In discussing the ramifications of NEPA, the Court said:
NEPA's instruction that all federal agencies comply with the impact statement requirementand with all the other requirements of § 102"to the fullest extent possible," 42 U.S.C. § 4332, is neither accidental nor hyperbolic. Rather, the phrase is a deliberate command that the duty NEPA imposes upon the agencies to consider environmental factors not be shunted aside in the bureaucratic shuffle. . . .
Section 102 recognizes, however, that where a clear and unavoidable conflict in statutory authority exists, NEPA must give way.
Id. 96 S.Ct. at 2437-2438. The Court concluded that NEPA must give way in the case before it.
[E]ven if the Secretary's action in this case constituted major federal action significantly affecting the quality of the human environment so that an environmental impact statement would ordinarily be required, there would be a clear and fundamental conflict of statutory duty. The Secretary cannot comply with her duty to allow statements of record to go into effect within 30 days of filing, absent inaccurate or incomplete disclosure, and simultaneously prepare impact statements on proposed developments.
Id. 96 S.Ct. at 2439.[1]
The Court went on to say that this conclusion did not mean environmental concerns *585 were irrelevant to ILSA or that the Secretary has no duties under NEPA. The environmental concerns are in fact dealt with by § 1406(5) of ILSA. 15 U.S.C. § 1705(5). The Court reasoned that if the information contained in the disclosure statement as required by this section were inadequate to the purposes advanced by Scenic Rivers Association, then it or some other group could petition the Secretary to commence rulemaking proceedings.
Therefore, if the Secretary finds it necessary for the protection of purchasers or in the public interest, she may adopt rules requiring developers to incorporate a wide range of environmental information into property reports to be furnished prospective purchasers; and respondents may request the Secretary to institute a rulemaking proceeding to consider the desirability of ordering such disclosure. 5 U.S.C. § 553(e).
Id. 96 S.Ct. at 2439. The Court did not expand further on the duties of the Secretary under NEPA, implying that the Secretary's actions under ILSA as currently practiced are in compliance with NEPA. This is supported by the Court's discussion of the effect of the already required disclosure of environmental information and the avenue for expanding such information.

III
We turn now to a consideration of the five main points of relief urged by plaintiffs in light of the Court's action in Flint Ridge.

A. Expanded Environmental Information in Reports.

Plaintiffs assert and defendants do not deny that the property reports and statements of record currently being filed with OILSR do not contain information concerning the impact of the registered subdivision on the environment. The information generally concerns the impact of the environment on the subdivision itselfe. g., possibility of flooding, soil erosion, and the like. What plaintiffs apparently prefer is an environmental impact statement for each subdivision, which is foreclosed by Flint Ridge. Rather than abandon the claim, plaintiffs have reworded it so that HUD would not be required to prepare its own environmental impact statement for each subdivision, but rather would require developers to include that same information in the property reports and statements of record themselves.
The difficulty with plaintiffs' request is that currently ILSA and the applicable regulations promulgated pursuant thereto do not require such information. Acknowledging this, plaintiffs urge the court to require defendants to institute rulemaking proceedings to adopt rules and regulations designed to supplement the statements with this information. This we decline to do for three reasons.
First, the Supreme Court, in Flint Ridge, made clear that it would not order the Secretary to institute rulemaking proceedings. The respondent environmental protection group in that case was told that it "may request the Secretary to institute a rulemaking proceeding to consider the desirability of ordering such disclosure." Flint Ridge, supra 96 S.Ct. at 2440. This court will not order the Secretary to do that which the Supreme Court has so recently told her she may do "if [she] finds it necessary for protection of purchasers or in the public interest." Id. 96 S.Ct. at 2440.
Second, defendants have initiated sua sponte rulemaking concerning just this area. This action, discussed by defendants' counsel at oral argument and documented by an exhibit labelled Advance Notice of Proposed RulemakingStatement of Record and Property Report, was taken in response to the Court's discussion in Flint Ridge. Among the questions the notice states will be addressed is "Are the environmental disclosure requirements in the current regulations adequate." Plaintiffs argue in effect that this is too little too late. While the notice is, considering its origin, surprisingly brief and to the point, it cannot be condemned as an abandonment of *586 HUD's duties under NEPA. It may be appropriate for HUD to expand this notice by a statement that it is intended to consider the full range of environmental information that would seem to be required by NEPA.
Third, it is not this court's function to draft rules and regulations for administrative agencies to be submitted to them for promulgation. Such usurpation of administrative power would ill serve the orderly operation of the federal government. Nor would such action pay proper respect to the division of power inherent in the Constitution and the Administrative Procedure Act, 5 U.S.C. § 551 et seq.
Plaintiffs contend that the failure of this court to order rulemaking will subject them once again to the "bureaucratic shuffle," since they in fact requested rulemaking in a letter to the former administrator of OILSR on February 21, 1975. That letter included, as one of four requests for "courses of action" by OILSR, "that you revise the rules and regulations of [OILSR] to comply with the procedural requirements of NEPA and CEQ and that such revisions be made according to the procedural requirements of the Administrative Procedure Act, 5 U.S.C. § 551 et seq." The response to that request declined any immediate action, taking note of the pendency of Flint Ridge Development Co. v. Scenic Rivers Association. Letter from John R. McDowell to James Kurtz-Phelan, March 12, 1975. HUD has since instituted the rulemaking proceeding discussed above, which presumably will deal with many if not all of the elements requested by plaintiffs. Whether we find now that plaintiffs have not exhausted their administrative remedies before seeking judicial review of the refusal to engage in rulemaking, or that a finding of exhaustion is mooted by HUD's subsequent actions, the result is the same: plaintiffs should bring their concerns to HUD in the forum provided by HUD. Subsequent adverse actions by HUD, assuming other requirements are met, would probably be judicially reviewable.

B. Comprehensive Programmatic Environmental Impact Statement.

Plaintiffs argue that once defendants are ordered to comply with their duties under NEPA, they must adopt various rules and procedures to fulfill these duties, all of which would allegedly constitute "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Therefore, they continue, defendants should be required to file a comprehensive environmental impact statement for the proposed new programs and procedures. The flaw in this argument is in its basic assumption.
The court has not ordered defendants to institute rulemaking in this case. Therefore there is no "major federal action" being taken by defendants, nor even a proposal of major federal action. Section 102(2)(c) of NEPA forecloses the necessity of an environmental impact statement until any major federal action at least reaches the proposal stage. Any other procedure would generate what has been called in other contexts "a quagmire of hypothetical judgments." The "trigger" for an environmental impact statement must be kept sufficiently well defined to avoid wasteful and possibly destructive misfires of NEPA's shotgun. See Kleppe v. Sierra Club, ___ U.S. ___, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

C. Periodic Environmental Impact Statements of Cumulative Effects of Registered Subdivisions.

This aspect of plaintiffs' prayed for relief would amount to a continuing monitoring system. OILSR would, under plaintiffs' proposal, conduct an independent analysis and evaluation of developer-generated information concerning environmental impacts of the subdivisions registered with the office and then issue environmental impact statements on the cumulative effects of all subdivisions.
Even if we were to assume for the purposes of this opinion that the Secretary's *587 action in registering subdivisions constituted major federal action significantly affecting the quality of the human environment so that an environmental impact statement would ordinarily be required, which is an assumption not established in the record, there would be a clear and fundamental conflict of statutory duty. See Flint Ridge, supra, 96 S.Ct. at 2439. There is nothing in ILSA that gives the Secretary the power to conduct the kind of continuing monitoring process envisioned by plaintiffs. The act is simply not designed to have the Secretary conduct periodic updates on the environmental information that might be added to the property reports and statements of record. For purposes relevant here, the Secretary's involvement with each registered subdivision ends upon the acceptance of the tendered statement of record. It is true that the Secretary may institute an action for violation of any of the provisions of ILSA or any rule or regulation promulgated pursuant thereto, but the types of actions most reasonably involved in enforcement proceedings would concern sale of lots in unregistered subdivisions or fraudulent practices. See Flint Ridge, supra 96 S.Ct. 2430, 15 U.S.C. § 1703. In any event, neither ILSA nor the regulations, 24 C.F.R. § 1700.1 et seq. (1975), envision a continuing duty on the part of the Secretary to review periodically the statements of record and update them to reflect future developments. Since the requirement of periodic environmental impact statements of cumulative effects of registered subdivisions is not found in the act itself nor in the promulgated regulations, then it would be beyond the duties of the Secretary under ILSA. And since we may assume that if Congress had intended for the Secretary to have and exercise such powers it would have specified them, it would be in conflict with ILSA to interpret NEPA as requiring this.

D. Implementation of § 103 of NEPA.

NEPA requires that all agencies comply with its mandate to the fullest extent possible. One facet of compliance was a Congressional directive that all agencies file with the President a report by July 1, 1971 detailing "deficiencies or inconsistencies [in the agency's enabling statute] which prohibit full compliance with the purposes and provisions" of NEPA. 42 U.S.C. § 4333. Plaintiffs admit that defendants filed the so-called § 103 report with the President, but argue that this response was insufficient in that it failed to detail any alleged inconsistency between ILSA and NEPA. Plaintiffs contend that "[a]lthough the deadlines for reviewing and reporting to both the President and the CEQ pursuant to Section 103 have passed, this court can still promote the important public policies or that section by ordering compliance forthwith."
It is difficult to see what purpose such an order could serve now. In light of the Supreme Court's decision in Flint Ridge, the prominence given Supreme Court opinions in this area, and the vigorous prosecution of this case, the notice function of § 103 of NEPA need not further be implemented by an order of this court directing defendants to inform the President and the Council on Environmental Quality that NEPA and ILSA do not completely mesh.

E. General Compliance with NEPA.

Plaintiffs lastly contend that OILSR must generally comply with certain other sections of NEPA. The sections cited[2] are those which do not deal with environmental impact statements and which involve rather general policy goals and some minimal agency action. Since HUD generally has complied with these enumerated aspects of NEPA, the application and implementation of these policies and procedures to OILSR need not be separately ordered. We believe *588 that these aspects of NEPA do apply to HUD and to OILSR and the Secretary is of course free to take further action to implement them as she may deem necessary.

IV
From the foregoing, the court reaches the following conclusions: NEPA is in certain critical areas in conflict with ILSA and that in these areas NEPA must give way. The Secretary need not file an environmental impact statement as to each subdivision registered with OILSR. That was made clear by the Court in Flint Ridge. Any modifications of property reports and statements of records must be made by the Secretary and can be accomplished through the rulemaking proceeding instituted in response to Flint Ridge. Plaintiffs may of course seek to clarify or expand on the environmental information and considerations involved in that rulemaking proceeding and may urge the Secretary to take it upon herself to utilize this rulemaking proceeding to consider the full panoply of NEPA and invite comment from interested environmental groups.
Plaintiffs' request for a comprehensive programmatic environmental impact statement is premature, since no proposal for major federal action has been made, or at least brought to the attention of the court. Periodic environmental impact statements of cumulative effects of registered subdivisions would be outside the power of the Secretary and not required under NEPA even if some major federal action were had or proposed, which has not been established here, because in conflict with the fundamental purpose of ILSA as a disclosure statute to protect innocent purchasers from fraudulent practices.
It is not deemed necessary for the Secretary to prepare a further report in the nature of a § 103 report and to submit it to the President for his evaluation and consideration. Finally, defendants have made a good faith effort to comply with subparagraphs (A), (B), (E), and (G) of § 102 of the National Environmental Policy Act.
Defendants are entitled to a summary judgment as a matter of law. Plaintiffs are not.
It is therefore ORDERED, ADJUDGED AND DECREED that defendants' motion for summary judgment be, and the same hereby is granted, and that plaintiffs' motion for summary judgment be, and the same hereby is denied. No costs are to be taxed.
NOTES
[1] This conclusion had the effect of completely and finally foreclosing the central thrust of plaintiffs' casei. e., the requirement of filing an environmental impact statement on each subdivision registration filed with OILSR. It was in apparent response to this that plaintiffs "regrouped" in their reply brief and at oral argument. The five main premises outlined above are the result of this revised statement of relief requested here.
[2] Plaintiffs separately enumerate 42 U.S.C. §§ 4332(2)(A), (B), (D), and (F). The sections referred to, as is made obvious by plaintiffs quotations therefrom, are the sections as they existed prior to August 9, 1975. At that time Congress redesignated subparagraphs (D), (E), (F), (G), and (H) as subparagraphs (E), (F), (G), (H), and (I) respectively and added a new subparagraph (D). Pub.L. No. 94-83, 89 Stat. 424. We will refer to the subparagraphs as they now exist, which are 42 U.S.C. §§ 4332(2)(A), (B), (E), and (G).